Carr, J.
The assignee of a bond or note must use due diligence to recover from the obligor or maker, before he can resort to the assignor. What is due diligence, has been left by the court to depend on the particular circumstances of each case. Generally speaking, the assignee must sue; must pursue a judicious course of proceeding; obtain a judgement, and the return of nulla bona on a fi. fa. These seem to be the general rules established by the cases. The exceptions to them, it is unnecessary to state. It is truly said by judge Roane, in Mackie v. Davis, that “ the assignee of a bond acquires a legal right to bring suit upon it, and to receive the money, discharged from any control of the assignor over the subject.” It is this legal right, which imposes on the assignee the duty of pursuing (as the same judge styles it) a judicious course of proceeding; by which, I presume, is meant, that he shall take such steps for the collection of the debt, as a prudent obligee would generally pursue.
*598 In the case before us, there was a judgement and execua forthcoming bond taken, and an execution on that. The first return on this execution was certainly not such as, of itself, to establish the insolvency of the obligors in the forthcoming bond; but the court permitted the sheriff to amend his return; and this, I think, it had a right to do, though it was after the lapse of five years, and after a verdict for the defendants at a former trial, and a new trial granted in this cause. The amended return, if it be taken to relate back to the date of the first (as I suppose it does) amounts to a return of nulla hona as to Wyatt; and the case of Stuart v. Goodall decides, that the assignor, in a suit against him, shall not be permitted to introduce proof to contradict such a return. But what was the return as to jHolmes ? So far from" amounting to a return of nulla bona, it shewed that there were goods of Holmes, and that this execution was levied on some, but not on all of them. This return then does not establish that sort of insolvency of Holmes, which the court will not suffer to be contradicted. The proof, indeed, that at this time Holmes had property sufficient to satisfy this execution, other than that levied on, would stand perfectly well with the sheriff’s return. Such proof the defendants offered, but the court excluded it. In this, I think, the court erred; for such proof was surely relevant both to the question of insolvency and of due diligence. What bearing it might have on those questions, was for the jury, with whom it remained to decide upon all the circumstances, whether the plaintiffs had made out a case which entitled them to come upon the assignors. Farther, to prove that while this same execution was in the hands of the sheriff, there was other property of Holmes, the defendants offered evidence to prove, that this execution was levied upon a slave of value sufficient to satisfy the execution, and discharged by the sheriff without the assent of the plaintiffs: and this too was excluded by the court, though it did not contradict the sheriff’s return, and bore, I think, upon both questions before the jury. It went to convict *599 the sheriff of a gross violation of duty, such as would have made him clearly liable for the debt; and it might have fairly raised the question, whether due diligence, involving a judicious course of proceeding, would not have required the assignees to take steps against the sheriff, before coming upon the assignors ? I do not understand that any case in this court has gone so far as to say that the assignee, while holding the uncontroled ownership and management of the debt, may pass by the grossest blunders and malconduct of law officers ; conduct rendering them unquestionably liable ; conduct which clearly prevented the making the money out of the debtor;—and come directly upon the assignor. I have seen no such case ; and I think it would be bad policy, as well as hard measure; it would tempt the assignee to connive at the malpractices of sheriffs, and to hurry over in the most careless and summary way, the process which was to bring him upon the assignor. The assignor is quite as much entitled to the favor of the court as the assignee. He gives the whole control of the case out of his hands, and before he is compelled to pay the debt, is entitled to demand proof, that after an honest and diligent pursuit of his debtor, the money cannot be made. I am of opinion that the judgement should be reversed.
Titcker, P. In the case of Mackie v. Davis, this court, in establishing the liability of the assignor to the assignee, who after due diligence to recover from the obligor has failed to receive the amount of an assigned bond, carefully avoided, nevertheless, to lay down any rule as to what amounts to due diligence. The court has since, with equal caution, declined the attempt to draw the precise line at which the assignor’s liability commences. It is wise, I think, in their successors to follow the example. The demarcation will best be made by successive decisions, which will serve as landmarks to those who engage in the traffic for bonds. The decisions of the courts on such questions, if they do not stand upon the elevated ground of being rules of property, *600 are at least the law of contracts. Those who buy and those who sell, look for the obligations which are assumed by the assignor, to those decisions. Hence the principle stare decisis, is peculiarly applicable to cases of this description. ^Pon these considerations, I shall take the case of Stuart v. Goodall, which has never been impugued, as not now to be questioned; modified at least as it is by the opinion of judge Roane in the case of Barksdale v. Fenwick. And on the same ground, I shall consider the cases of Caton & Veale v. Lenox, and Harrison v. Raine as not to be now questioned. With these preliminaries, let us proceed to the consideration of this case. It comes to us upon exceptions to the opinions of the court who tried the cause, and those opinions constitute therefore the subject of examination.
1. I do not perceive, that, there was an exception to granting the new trial, but as this matter was made a subject of discussion, I shall observe, that I think the new trial was rightly granted to the plaintiffs, because the verdict had been found under an erroneous instruction of the. court. The return of the sheriff as originally made, having omitted to return nulla bona as to Wyatt, the plaintiffs were indeed without the benefit of that conclusive return; but, as the action might have been sustained by proof of insolvency, without even the institution of a suit, and as such proof is also a sufficient excuse even for negligence in the prosecution of one, if it could have been sufficiently made out that no diligence would have been availing, I think it clear, that the plaintiffs should have been permitted to prove that Wyatt was in truth insolvent when their execution issued.
2. Upon the second trial, the amended return was produced in evidence, and was admitted. I think it was properly admitted. It did not give a cause of action by relation, but it was evidence of a fact which existed before the suit, and which might have been proved by other evidence. The plaintiffs, moreover, had a right to have had this return of the sheriff as to the fact, before the suit brought, and were therefore entitled to it nunc pro tunc: and there is less rea *601 son for the objection to its admissibility, since it did not con- „ , , ... .... tradici a former return, but only supplied an omission in it.
3. This return having been admitted, the defendants then " .... . offered to prove that Wyatt at the date of that execution had other property. This evidence was rejected, and I think properly. It is not stated, that the property so supposed to exist, was known either to the sheriff or to the assignees ; and the fact, therefore, did not go to fix a malfeasance on the sheriff or negligence in the plaintiffs. Nothing is more possible, than that a man may have property un' known to the sheriff and the assignee, though the sheriff may honestly and truly have returned nulla bona as to him. The assignor, as judge Roane tells us, may well be presumed to know more of the obligor and his properly than the assignee. It was, probably, for that reason among others, that in Stuart v. Goodall, the court justified the peremptory refusal of the county court of Henrico, to permit the introduction of evidence to prove that Beverley, the obligor, had goods and effects sufficient to satisfy the execution at the time of the sheriff’s return. Judge Tucker approved this refusal, expressly on the ground, that the admission of the evidence would have been to permit the return to be contested, whereas it was incontrovertible between the assignee and assignor. Judge Roane and judge Fleming concurred in refusing it, though upon grounds somewhat different, and perhaps yet stronger. They seem to have considered the return conclusive upon the rights of the parties, unless the assignee had been proved to have known that there was other property, or that any other execution would probably have produced the money. Many a bond has been bought and sold on the faith of that case, which may therefore be considered as entitled to peculiar respect. It has been familiarly considered as the law of the subject, for more than twenty years.
4. The plaintiffs having introduced the return upon the execution against Holmes, shewing that only a certain sum could be made out of him, and proof that between the date *602 of the issue of their execution and its return, he had taken the oath of insolvency, the defendant then offered evidence to prove that Holmes had other property, without however . r r . ^ offering to prove that the sheriff or assignee knew of it. I can see no material distinction between this and the case arising under the last mentioned bill of exceptions. In that, the return which it was proposed to controvert, was a return of nulla bona; in this, it is the return that the defendant in the execution had taken the oath of insolvency. He might, it is true, have been made to swear out again under a ca. sa. issued at the suit of Triplett 8f Neale; but there was no obligation to sue that ca. sa. tinder the circumstances, nor could the proof that he had other property be proper, unless accompanied by proof that the assignees knew of it. Without such knowledge, they could not be charged with want of due diligence.
5. As a last effort the defendants offered evidence to prove, that the execution on the delivery bond was levied on a slave who was discharged by the sheriff without the assent of the plaintiffs. The plaintiffs, then, were in no fault. The sheriff, if the fact was so, was guilty of a malfeasance, and is liable for the debt. To whom? That depends precisely upon the question, whether, in case of the sheriff’s malfeasance, the assignee is or is not bound to pursue him ? If he is not bound to pursue him, then the wrong done is a wrong done to the assignor, who may have his action on the case. My own opinion is, that where the debt is not made, and where the sheriff is only responsible for malfeasance, the assignee is not bound to pursue him. It would clog and embarrass assignments too much to require this; and, moreover, it is better that the party ultimately interested in establishing his default, should institute the proceeding for the purpose. This court seems, indeed, to have been averse to requiring of the assignee more than a diligent pursuit of the obligor, and has exonerated him from the necessity of pursuing collateral, uncertain, and merely contingent remedies. Hence the decision, that though there be *603 special bail, and though there has been a ca. sa. returned r • . ° . „ . . non est inventus (which prima facie makes the bail liable) yet it is not necessary to pursue him : for, peradventure, he ‘ .... might still relieve himself by bringing in the principal before the return of the first scire facias executed, or of the second returned nihil. Such was the decision in Caton & Veale v. Lenox. And if the assignee is not bound to pursue the bail, even where there is a moral certainty that he must be fixed with the debt (for, in that case, Tlartshorne was proved to be out of the country, and resident in Baltimore), I cannot perceive the propriety of requiring him to proceed against a sheriff, in order to take the chance of fixing upon him a malfeasance, which may charge him with the debt.
Upon the whole, I am of opinion, that there is no error in the proceedings of the circuit court, and that the judgement ought to be affirmed.
Cabell and Brooke, J. concurring with the president, judgement affirmed.